UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PAUL FREEMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:13-CV-059 JD |
| | ) | |
| CITY OF CROWN POINT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a civil rights action in which the plaintiff, Paul Freeman, seeks redress for being arrested and charged for a crime he did not commit. On February 8, 2013, Mr. Freeman initiated this action by filing a fourteen-count complaint against the City of Crown Point, Captain Sam Trapane, Detective Larry Scott, and "other unidentified officers of the Crown Point Police Department," alleging, *inter alia*, that the defendant police officers falsified incriminating evidence and withheld exculpatory evidence. The defendants have moved to dismiss all of the claims except for the claims brought against the officers in their individual capacities under 42 U.S.C. § 1983 for violations of Mr. Freeman's Fourth Amendment rights. [DE 18, 19]. The plaintiff has responded to that motion. [DE 26]. The defendants' reply brief was stricken for failure to comply with applicable filing rules, and though they were given leave to properly re-file it, they did not do so. [DE 27, 31]. The defendants also moved to strike an exhibit that the plaintiff attached to his response to the motion to dismiss [DE 28], and that motion has been fully briefed. [DE 29, 30, 32]. Finally, after the briefing on these matters had closed, the plaintiff filed a motion for the Court to take notice of supplemental authority [DE 37], to which the defendants have not responded.

For the following reasons, Defendants' partial motion to dismiss [DE 18] is GRANTED in part and DENIED in part; Defendants' motion to strike [DE 28] is DENIED, and; Plaintiff's motion to take notice of supplemental authority [DE 37] is GRANTED.

## I. FACTUAL BACKGROUND

This action stems from an incident in November 2010, in which a donation canister containing $142.00 was stolen from the front counter of County Seat Liquors[1] in Crown Point, Indiana. [DE 1 ¶ 9]. The theft was captured and recorded from multiple angles by County Seat Liquors' video surveillance system. [*Id.* ¶ 11]. After the theft, County Seat Liquors took a screen shot from the video recording and posted the picture of the perpetrator at the front counter. [*Id.* ¶ 15]. That picture remained in the store for several months, during which time numerous customers speculated as to who the individual may have been. [*Id.* ¶¶ 17, 18]. At some point, a customer noted in passing that the individual in the picture might "look like" Mr. Freeman, or something to that effect. [*Id.* ¶ 19]. Mr. Freeman had never even been inside County Seat Liquors, however. [*Id.* ¶ 13]. In January 2011, the owner of County Seat Liquors reported the theft to the police, and he provided the police with the video recordings of the theft and the list of names he had been provided of possible suspects, one of which was Mr. Freeman. [*Id.* ¶¶ 20, 21].

The Crown Point Police Department assigned Detective Larry Scott and Captain Sam Trapane, both of whom are defendants in this matter, to investigate the theft. [*Id.* ¶ 22]. Mr. Freeman alleges that after viewing the video and reviewing the list of names, and without any further investigation, the officers decided that Mr. Freeman must have committed the theft, and became determined to implicate him in the crime. [*Id.* ¶¶ 22, 23]. To do so, they allegedly

---

[1] The Complaint variously refers to the store as County Seat Liquor, Crown Seat Liquors, and Crown Point Liquors, though these all appear to refer to the same store.

fabricated a story that the teller on duty at the time of the theft had positively identified Mr. Freeman as the perpetrator. [*Id.* ¶ 24]. Even though the officers knew that this was false, they included this statement in their police reports and in the probable cause affidavit to secure a warrant for Mr. Freeman's arrest and to charge him with the crime. [*Id.* ¶ 27]. On February 9, 2011, based on these fraudulent statements, a warrant was issued for Mr. Freeman's arrest. [*Id.* ¶ 28].

When Mr. Freeman learned that the police were looking for him, he went to the police station in order to clear his name. [*Id.* ¶ 29]. Even though the warrant for his arrest had not been supported by probable cause, the officers arrested Mr. Freeman, transferred him to the county jail, and charged him with conversion. [*Id.* ¶ 30]. Mr. Freeman alleges that over the course of his criminal prosecution for this crime, the defendant officers repeatedly refused to give either Mr. Freeman's defense counsel or the prosecutor's office the video tapes of the theft, ignored or withheld exculpatory evidence, and took other unspecified efforts to draw out the disposition of the case. [*Id.* ¶ 31]. In September 2012, over a year and a half after the warrant was issued for Mr. Freeman's arrest, the officers finally provided Mr. Freeman's counsel and the prosecutor with a working copy of the video tape. [*Id.* ¶¶ 32, 33]. The tape clearly showed that the perpetrator had a tattoo on the left side of his neck. [*Id.* ¶ 12]. Because Mr. Freeman had no such tattoo, it was immediately apparent that he was not the perpetrator of the theft. [*Id.* ¶¶ 13, 34]. On September 25, 2012, the prosecutor moved to dismiss the charges on the grounds of misidentification. [*Id.* ¶ 34]. Though the charges were ultimately dropped, Mr. Freeman alleges that he suffered significant damages while the charges were pending, including emotional distress, lost wages, and lost educational opportunities, and that he continues to suffer the effects

of the charges, including through diminished job and career prospects, because the theft charge still shows up on background checks. [*Id.* ¶¶ 36, 37].

Mr. Freeman therefore filed his fourteen-count complaint in this matter on February 8, 2013. [DE 1]. Counts I though III assert claims under § 1983 for violations of Mr. Freeman's Fourth Amendment rights, alleging unlawful arrest, unlawful seizure, and a failure to intervene to prevent these violations, respectively. Counts IV and V assert conspiracy claims under § 1983 and § 1985, respectively. Count VI asserts a claim for malicious prosecution under § 1983. All of the foregoing counts appear to be directed at the officers in their individual capacities. Count VII is directed at the City of Crown Point, and alleges that the city is liable under § 1983 for the above constitutional violations on account of informal policies or practices of the city that caused the violations. Finally, Counts VIII through XIV assert various state law claims, including malicious prosecution, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, conspiracy, indemnification, and respondeat superior. Defendants' motion to dismiss seeks dismissal of all counts except for Counts I through III.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must decide whether the complaint satisfies the "notice-pleading" standard. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide "fair notice" of the claim and its basis. *Id*. (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal citations omitted); *see also Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In determining the sufficiency of a claim, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (internal citations omitted).

The Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id*. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Second, if well-pleaded factual allegations are present in the complaint, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (internal citations omitted). A plaintiff's claim, however, need only be plausible, not probable. *Indep. Trust Corp.*, 665 F.3d at 934 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In order to satisfy the plausibility standard, a plaintiff's complaint must supply "enough facts to raise a reasonable

5

expectation that discovery will yield evidence supporting the plaintiff's allegations." *Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). Factual allegations, however, "that are merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678.

### III. DISCUSSION

Defendants have asserted eight separate grounds for dismissing one or more counts, and the plaintiff has in fact conceded several of them. The plaintiff has therefore agreed to voluntarily dismiss the following claims: § 1985 conspiracy (Count V); state law false imprisonment (Count IX); intentional and negligent infliction of emotional distress under state law (Counts X and XI); conspiracy under state law (Count XII); and state law indemnification and respondeat superior (Counts XIII and XIV). [DE 26 p. 1 n.1]. In addition, though the plaintiff did not specifically state that it was voluntarily dismissing the state law malicious prosecution claim (Count VIII), it did not respond to any of the defendants' arguments in favor of dismissing that count, so the Court construes the plaintiff's silence as an agreement to dismiss that count as well.[2] Finally, the plaintiff has agreed to voluntarily dismiss the "other unidentified officers of the Crown Point Police Department" from this matter.

That leaves three counts in dispute: the § 1983 conspiracy claim (Count IV); the § 1983 malicious prosecution claim (Count VI); and the § 1983 claim against the City of Crown Point based on the alleged constitutional violations committed by its officers (Count VII). The first two

---

[2] In addition, the Indiana Tort Claims Act immunizes the defendants from such a claim, which would require dismissal as well. *Serino v. Hensley*, 735 F.3d 588, 595–96 (7th Cir. 2013); *Butt v. McEvoy*, 669 N.E.2d 1015, 1017–18 (Ind. Ct. App. 1996).

present purely legal questions, while the third is a matter of whether the plaintiff has pled sufficient allegations to state a claim against the city under *Monell*. After resolving the defendants' motion to strike, the Court will address each of those issues in turn.

A.  **Defendants' Motion to Strike**

In responding to the defendants' motion to dismiss, the plaintiff attached an exhibit containing two news articles. The articles, dated July 1, 1997 and January 17, 2002, report on separate allegations of misconduct against officers of the Crown Point Police Department. [DE 26-1]. The defendants have moved to strike this exhibit because it presents matters outside of the pleadings. "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c) and collecting cases). Under Rule 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Neither party asks this Court to convert the motion to summary judgment, which the Court agrees would be inappropriate.

However, Plaintiff clarified in his response that he has provided these articles merely for illustrative purposes to demonstrate the plausibility of his *Monell* allegations, which is a permissible use of such materials. As the Seventh Circuit stated in *Geinosky*:

> If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56. A plaintiff, however, has much more flexibility in opposing a Rule 12(b)(6) motion and in appealing a dismissal. A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings. In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove. In the

7

turmoil concerning civil pleading standards stirred up by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff who is opposing a Rule 12(b)(6) or Rule 12(c) motion and who can provide such illustration may find it prudent to do so.

675 F.3d at 745 n.1 (internal citations omitted). Plaintiff has done precisely that here, so the Court will consider the articles for this limited purpose. Thus, although the illustrative value of these particular articles is likely minimal, the Court will not strike or exclude the exhibit, so the defendants' motion is DENIED.

## B.  Conspiracy under Section 1983

Turning to the substance of the motion to dismiss, the defendants first seek dismissal of Count IV, which asserts a claim under 42 U.S.C. § 1983 based on allegations that the officers conspired to violate Mr. Freeman's constitutional rights. Defendants do not dispute that the complaint adequately pleads a conspiracy, but argue that this claim must be dismissed because a conspiracy is not actionable under § 1983. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."). This is an accurate statement of law, so if this count alleged only that the conspiracy itself violated Mr. Freeman's constitutional rights, it would not state a claim. However, while this may be a plausible reading of the claim as it is written, Plaintiff has clarified that the conspiracy count is only meant to attach liability to the conspirators for the substantive constitutional violations committed by their co-conspirators, and that he does not claim that the conspiracy itself violated his constitutional rights. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("In a tort case such as this (a section 1983 constitutional-tort case . . . ), the function of a conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint."). In other words, the

8

conspiracy count is predicated on the substantive constitutional violations alleged in the other counts, and simply serves to potentially extend that liability to additional defendants.

While adding a separate claim for conspiracy could arguably be considered superfluous since the plaintiff has also brought claims for the substantive violations against each of the individual defendants, *see James v. Village of Willowbrook*, No. 11-cv-9126, 2012 WL 3017889, at *6 (N.D. Ill. July 19, 2012) (construing the § 1983 conspiracy count as redundant to the substantive counts pled against the same officers), federal courts routinely recognize § 1983 conspiracy claims in these circumstances. *Geinosky*, 675 F.3d at 749–50 (reversing the dismissal of a conspiracy claim under § 1983 where the plaintiff had adequately pled substantive constitutional claims); *Jones*, 856 F.2d at 992 (7th Cir. 1988); *Freeman v. City of Milwaukee*, No. 13-cv-918-JPS, 2014 WL 197912, at *11–12 (E.D. Wisc. Jan. 15, 2014) (denying a motion to dismiss a § 1983 conspiracy claim); *Rivera v. Lake County*, No. , at *7 (N.D. Ill. Sept. 26, 2013) (same). The defendants do not contest that the complaint adequately pleads substantive violations of Mr. Freeman's rights under the Fourth Amendment, nor do they contest that it adequately pleads a conspiracy to violate those rights, so the motion to dismiss is DENIED as to Count IV.

**C.     Malicious Prosecution under Section 1983**

Defendants next challenge Count VI, Plaintiff's malicious prosecution claim under § 1983. Defendants argue that Indiana law provides an adequate remedy for the alleged violations of Plaintiff's rights, so there has not been a substantive violation of his constitutional rights on which to base this claim. Plaintiff responds that because the defendants enjoy absolute immunity from claims of malicious prosecution under state law, Indiana law does not provide an adequate remedy for his injuries, resulting in a violation of his constitutional rights.

9

"Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 255 (7th Cir. 1997). Any action under § 1983 must therefore be grounded on a specific constitutional clause or statutory provision. *Id.* However, unlike the Fourth Amendment's prohibition on unreasonable searches and seizures, for example, there is no express constitutional right against malicious prosecution or "being prosecuted groundlessly." *Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008); *Serino v. Hensley*, 735 F.3d 588, 592–93 (7th Cir. 2013) (noting that "[f]ederal courts are rarely the appropriate forum for malicious prosecution claims" since "individuals do not have a federal right not to be summoned into court and prosecuted without probable cause"). Accordingly, when brought under federal law, the claim referred to colloquially and under state common law as "malicious prosecution" is typically based on the deprivation of liberty without due process of law, in violation of the Fourteenth Amendment.[3] U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law"); *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013); *see Hensley*, 735 F.3d at 592 ("[W]e usually analyze these self-styled 'malicious prosecution' claims as alleging a violation of a particular constitutional right, such as the right to be free from unlawful seizures under the Fourth Amendment, or the right to a fair trial under the Due Process Clause.").

---

[3] Many other circuits ground malicious prosecution claims in the Fourth Amendment where the plaintiff was seized during the process, which would obviate the need to consider the adequacy of state remedies. *Julian*, 732 F.3d at 846 (collecting cases). As the court recognized in *Julian*, however, the difference is immaterial here; because Indiana does not provide an adequate state remedy, Mr. Freeman's claim survives under the Fourteenth Amendment, and the elements of a malicious prosecution claim are the same under the Fourth and Fourteenth Amendments. *Id.*

Courts have recognized that the harm caused by malicious prosecutions may implicate liberty and property interests, as contemplated by the Due Process Clause. *See Hensley*, 735 F.3d at 594–95 (noting that imprisonment and pretrial travel restrictions implicate liberty interests, and that, at least arguably, one's reputation and finances are protected interests); *Julian*, 732 F.3d at (noting that the plaintiff sustained damages while being kept "in limbo" for several years while awaiting trial). *But see Alexander v. McKinney*, 692 F.3d 553, 556–57 (7th Cir. 2012) (holding that a plaintiff did not state a Due Process Clause violation for having to face trial based on fabricated and suppressed evidence where the only harm he alleged stemmed from his initial arrest, which must be addressed through the Fourth Amendment). However, except in narrow circumstances not applicable here, the Fourteenth Amendment's Due Process Clause is not absolute—it does not proscribe deprivations of liberty or property altogether, it just requires that individuals receive "due process" (which is itself a fluid concept) when such deprivations occur. U.S. Const. amend. XIV, § 1; *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) ("Nothing in [the Fourteenth] Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.'").

Thus, once a plaintiff adequately pleads a deprivation of his liberty or property by a state, a court must determine whether the state affords the plaintiff due process for that deprivation, which can include a post-deprivation civil action against the state or its agents. *Hensley*, 735 F.3d at 592 ("But because we are concerned only with due process in these circumstances, the existence of an adequate *state* remedy for the plaintiff's injury eliminates the need for federal intervention via § 1983."); *Julian*, 732 F.3d at 845 ("[T]o preclude the federal remedy there must be an adequate state remedy."). If so, then there is no Due Process Clause violation, meaning that

there is no constitutional violation upon which to base a § 1983 claim. *Albright v. Oliver*, 510 U.S. 266, 285 (1994) (Kennedy, J., concurring) ("[W]here an injury has been caused not by a state law, policy, or procedure, but by a random and unauthorized act *that can be remedied by state law*, there is no basis for intervention under § 1983." (emphasis added)). As the Seventh Circuit has summarized, "the existence of a malicious prosecution cause of action under state law '*knocks out* any constitutional tort of malicious prosecution, because, when a state-law remedy exists . . . due process of law is afforded by the opportunity to pursue a claim in state court.'" *Hensley*, 735 F.3d at 593 (quoting *Newsome*, 256 F.3d at 751) (alteration in original).

Here, Mr. Freeman's claim is that he was deprived of liberty interests by a malicious prosecution, and Indiana does recognize malicious prosecution as a cause of action. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001). However, the Indiana Tort Claims Act provides the defendants, as governmental entities and employees, with absolute immunity against claims of malicious prosecution. Ind. Code §§ 34-13-3-3(6), (8), -5(b), (c); *Butt v. McEvoy*, 669 N.E.2d 1015, 1017–18 (Ind. App. 1996). Thus, although Indiana recognizes claims of malicious prosecution in theory, such a claim would afford Mr. Freeman no possibility of relief. State law remedies need not be comprehensive or guaranty relief in order to be constitutionally adequate, though, *see Hudson v. Palmer*, 468 U.S. 517, 535 (1984) ("[T]hat [Plaintiff] might not be able to recover under these [state] remedies the full amount which he might receive in a § 1983 action is not, as we have said, determinative of the adequacy of the state remedies."), so there has been conflicting authority on whether Indiana nonetheless provides an adequate remedy.

12

The Seventh Circuit addressed this question in a related context in *Belcher v. Norton*, and held that the Tort Claims Act deprives plaintiffs who assert claims against state officers of an adequate alternative remedy to a federal suit where the defendants would be immunized from any liability. 497 F.3d 742, 751 (7th Cir. 2007) (stating that while the remedies under state law need not be the same as would be available under § 1983 to constitute an adequate remedy, the relief afforded by the state remedy cannot be "meaningless or non-existent"). Though a number of district courts subsequently held that the Tort Claims Act did not deprive plaintiffs of adequate state remedies as to malicious prosecution, the Seventh Circuit recently overturned this line of cases and expressly held that Indiana law does not provide a constitutionally adequate state remedy for malicious prosecution due to its grant of absolute immunity. *Julian*, 732 F.3d at 846–48 ("[I]ndiana's failure to provide an adequate remedy for malicious prosecution by public officers opens the door to federal malicious prosecution suits against such officers . . . ."); *see also Hensley*, 735 F.3d at 593 (reiterating *Julian's* holding that "Indiana state law does *not* provide an adequate remedy for malicious prosecution"). Therefore, because the state remedy is inadequate, plaintiffs whose liberty or property are deprived through malicious prosecution in Indiana are denied due process of law in violation of the Fourteenth Amendment, and may seek redress through § 1983.

Here, Defendants do not dispute that Mr. Freeman has alleged deprivations of his liberty through malicious prosecution by state actors. Because Indiana law provides no adequate remedy for those deprivations, he has sufficiently plead a violation of his Fourteenth Amendment rights and can maintain an action under § 1983. Defendants' motion to dismiss is therefore DENIED as

to Count VI. Plaintiff's Motion for the Court to Take Notice of Supplemental Authority, which attached the Seventh Circuit's opinion in *Julian*, is GRANTED.

**D.     Municipal Liability under Section 1983**

Defendants finally move to dismiss Count VII, which asserts that the City of Crown Point is liable under § 1983 for the constitutional torts committed by its employees. There is no such thing as vicarious liability under section 1983, though, as section 1983 does not impose liability on a municipality "*solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, to proceed with an action against a municipality based on a constitutional violation committed by its agents, a plaintiff must plead:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (internal quotations omitted); *Johnson v. Cook Cnty.*, 526 F. App'x 692 (7th Cir. 2013). Thus, to survive a motion to dismiss, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that was the moving force behind the constitutional violations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citation omitted).

As with any pleading, though, merely pleading "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Seventh Circuit has summarized the analysis of a motion to dismiss as follows:

14

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Accordingly, the central principles of this analysis are that only facts, not legal conclusions, receive a presumption of truth, and that those facts must provide enough detail to provide notice of the claim and its bases and to show that the claim is plausible, not merely speculative. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (holding that while no heightened pleading standard applies to *Monell* claims, the complaint must still "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Plaintiff's *Monell* claims fall short of this standard, as the allegations are predominantly made up of bare legal conclusions, and the few factual allegations that arguably relate to the city's alleged policies are too few and too generalized to plausibly suggest that the City of Crown Point's policies were the moving force behind the alleged violations and to provide it with adequate notice of the claims against it. Mr. Freeman does not allege that his injuries were caused by any express municipal policy or by a person with final policymaking authority for the City of Crown Point. Rather, he proceeds under the more nebulous second *Monell* prong, arguing that his injuries were caused by unofficial but widespread practices so permanent and well-settled as to constitute a policy. The complaint first alleges as to the *Monell* claims that "Defendant City of Crown Point maintains policies, practices, or customs that caused or were the

moving force behind the above-mentioned constitutional violations." [DE 1 ¶ 51] This is a bare legal conclusion and can be disregarded for these purposes.

Second, the complaint alleges that "Plaintiff's injuries were proximately caused by Defendant Crown Point's policies, practices, and customs of failing to train, supervise, discipline and control their police officers. Defendant Officers' misconduct was undertaken pursuant to the policy, practice, and custom of the City of Crown Point in that" the City of Crown Point "fail[s] to adequately investigate, punish and discipline prior instances of similar misconduct," "rarely make[s] findings of wrongdoing" for abuses by its officers, and that its policymakers "are aware of, and condone and facilitate by their inaction, a 'code of silence' in the Crown Point Police Department." [*Id.* ¶ 52]. Again, these are largely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which do not suffice. *Iqbal*, 556 U.S. at 678. Though these legal conclusions contain several allegations of a factual nature, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and to the extent these factual allegations are entitled to a presumption of truth, they are much too general and "sketchy" to provide Defendants with notice of the claims against them and to raise Plaintiff's right to relief beyond the speculative level. *Id.*; *Brooks*, 578 F.3d at 582 (dismissing a § 1983 claim where the factual allegations provided "merely a formulaic recitation of the cause of action" and did not "put the defendants on notice of what exactly they might have done to violate" the plaintiff's rights).

For example, the complaint alleges that "Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so." [DE 1 ¶ 52(d)]. First, it is not clear that this allegation actually refers to police officers

generally or to officers within the Crown Point Police Department. Second, this broad statement, without any factual support or basis, is insufficient to provide Defendants with notice of the claim against it or to create a reasonable inference that the city adopted a de-facto policy of intentionally causing the deprivations alleged here. *See Gibson v. City of Chicago*, No. 13 C 03273, 2013 WL 6698164, at *3–4 (N.D. Ill. Dec. 17, 2013) (dismissing a *Monell* claim that alleged that the city "acted willfully and wantonly in that it condones a code of silence among police officers that leads to numerous prosecutions designed to cover up batteries and false arrests"); *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6–7 (N.D. Ill. Jan. 8, 2014). (dismissing a *Monell* claim where the allegations were so broad as to "encompass virtually all the activities of a police department and every contact it has with the public").

The complaint similarly alleges that "officers of the Crown Point Police Department abuse citizens in a similar manner to that alleged by Plaintiff on a frequent basis, yet the Crown Point Police Department rarely make [*sic*] findings of wrongdoing." [DE 1 ¶ 52(c)]. Again, this overgeneralized statement fails to provide the City with adequate notice of the claims against it. Mr. Freeman has alleged at least five separate violations by the officers here, including arresting him without probable cause, fabricating incriminating statements, failing to intervene, conspiring against him, and withholding exculpatory evidence. The allegation that officers "abuse citizens in a similar manner to that alleged by Plaintiff" could be referring to any or all of these alleged abuses. As in *Armour*, this would encompass nearly every activity of the department, and deprives the City of the notice to which it is entitled as to what policies it maintains that deprived Mr. Freeman of his rights. *Armour*, 2014 WL 63850, at *6–7; *see also Falk v. Perez*, No. 12-cv-1384, 2013 WL 5230632 (N.D. Ill. Sept. 12, 2013) (dismissing a *Monell* claim based on

allegations that the defendant "failed to adequately supervise, discipline, and control its officers, . . . allowed conduct such as Defendant['s] to continue as a matter of practice, . . . [and] failed to adequately secure and protect the rights of tenants in eviction and foreclosure actions as a matter of widespread practice so prevalent as to comprise policy").

In opposing the motion to dismiss, Plaintiff primarily relies on the allegation in the body of the complaint that "the Defendant Officers *repeatedly refused* to give Plaintiff's defense counsel and/or the prosecutor's office the video tapes of the theft . . . and *took other efforts* to draw out the disposition of Plaintiff's frivolous criminal case." [DE 1 ¶ 31 (emphasis added)]. Plaintiff argues that this distinguishes this case from others in which a plaintiff asks the court to infer the existence of a policy from only a single act of misconduct, since the officers here allegedly engaged in multiple acts of misconduct. As an initial matter, though, these allegations relate only to the officer's actions relative to the malicious prosecution claim, and not to any of the Fourth Amendment claims. Thus, even if these allegations sufficed to imply a municipal policy, they would only support a *Monell* claim as to the malicious prosecution count. Even as to that count, however, these allegations only pertain to a single prosecution and the officers' conduct relative to that prosecution. Thus, while this may present somewhat of a stronger case than one involving a single officer's use of excessive force during a single arrest, for example, the officer's alleged efforts to unlawfully prolong a single prosecution do not reasonably permit an inference that the city maintained a de-facto policy of withholding exculpatory evidence and maliciously prolonging prosecutions.

Finally, as previously discussed, Plaintiff has attached two news articles to his response to the motion to dismiss, which he argues demonstrate the plausibility of his *Monell* allegations.

However, these articles have too little relevance to Plaintiff's allegations to influence this analysis at all. The first article, dated July 1, 1997, describes an interrogation that apparently took place in November 1996, in which then-detective bureau chief Sam Trapane was one of the interrogators. This article is too remote in time to have any probative value here, and its content adds nothing to Plaintiff's allegations, either. Though the article describes the interrogation techniques as "questionable," its point is to question the validity of the subject's resulting admission, and it does not actually accuse the officers of any misconduct. The article also does not reflect any failure to train or failure to discipline, upon which Plaintiff has based his *Monell* claim, and does not otherwise relate to the facts of the case here. The second article is immaterial for similar reasons. It recounts a verbal altercation between an officer and a civilian who were involved in a car accident that took place in January 2002, nearly ten years before the events at issue here, and there is no indication that the incident involved a failure to train or discipline the officers. Further, even if the incident was in any way related to the claims here, the article would tend to rebut rather than illustrate the plausibility of Plaintiff's allegation that the City fails to investigate police misconduct, as the article notes that the Chief of Police assigned an officer to investigate the complaint.

In sum, Plaintiff has not plead sufficient factual content to put Defendants on notice of his claims and their grounds, or to raise his right to relief above the speculative level. Accordingly, the *Monell* claim against the City of Crown Point in Count VII must be dismissed, so Defendants' motion is GRANTED as to that count. This dismissal will be without prejudice, however. Having now had the benefit of conducting discovery on this matter, Plaintiff may be

able to amend the complaint to include sufficient factual matter to state a *Monell* claim if there is, in fact, a basis for such a claim.

## IV.  CONCLUSION

For the reasons stated, Defendants' motion to dismiss [DE 18] is GRANTED in part and DENIED in part. The motion is GRANTED as to Count V and Counts VII through XIV, which are DISMISSED WITHOUT PREJUDICE, and as to the "Other Unidentified Officers of the Crown Point Police Department," who are terminated as defendants in this matter, but is DENIED as to Counts IV and VI. Therefore, Counts I through IV and Count VI still remain at issue in this matter. In addition, Defendants' motion to strike [DE 28] is DENIED and Plaintiff's motion to take notice of supplemental authority [DE 37] is GRANTED.

SO ORDERED.

ENTERED:  February 11, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court